UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kylea Sutherland,

    Plaintiff,

v.

Eric K. Shinseki, Secretary of
Veteran Affairs,

    Defendant.

Civil No. 11-3118 (JNE/JSM)
ORDER

---

Stephen M. Thompson appeared for Plaintiff Kylea Sutherland.

Friedrich A. P. Siekert appeared for Defendant Eric E. Shinseki, Secretary of Veteran Affairs.

---

Plaintiff Kylea Sutherland ("Sutherland"), a former Veteran Affairs employee, filed this action for disability-based discrimination and retaliation against the Secretary of Veteran Affairs in his official capacity ("VA"). The case is before the Court on the VA's Motion for Summary Judgment. For the reasons set forth below, the Court denies the motion.

## BACKGROUND

The present case relates to Sutherland's employment by the Minneapolis VA Medical Center (MVAMC) as a part time nursing assistant for less than a month. Sutherland started a one-year probationary period as a nursing assistant on August 29, 2010. On September 28, 2010, the VA sent her a letter terminating her employment. Sutherland had previously worked for the VA as a student nurse technician from January 22, 2008 to May 17, 2010.

Wendy Barlow,[1] a nurse manager, interviewed Sutherland for the nursing assistant position. Barlow recommended that Sutherland receive an offer for a .6 FTE nursing assistant position. The .6 FTE designation meant that the position called for .6 the time of a full time position. The parties dispute whether Sutherland agreed to work full time during her orientation and training period. In her declaration, Barlow states that, during the initial interview, she told Sutherland that she would need to work full time during the 4-6 week training period and Sutherland agreed to do so. Sutherland denies that such a discussion occurred.

The orientation schedule shows that Sutherland had general orientation and clinical training scheduled all five weekdays of her first week that started on Monday, August 30, 2010. On Tuesday of that week, Sutherland asked Barlow for that Friday off for a school project. Barlow states that the request took her by surprise, but she approved Sutherland's request. On Thursday, Sutherland called in sick due to intestinal problems. Because Sutherland had not yet accumulated adequate leave time, Barlow took her off the duty schedule for September 2 and 3, i.e. cancelled her shifts, so that her attendance record would not be charged with an Absent Without Leave ("AWOL") mark for those days. Barlow explains that she was able to do this because Sutherland was a .6 FTE, so as long as she worked 6 out of the 10 days in her first two weeks, she would have worked the minimum required for pay and benefits.

Her second week, Sutherland worked all three days that she was scheduled. Sutherland worked the first two days, September 13 and 14, of her third week. On the evening of September 14, Sutherland suffered an epileptic seizure and was taken to the emergency room. After being released from the hospital, around 1 a.m. on September 15, she returned home. The doctor had

---

[1] Wendy Barlow has changed her name to Wendy Grimshaw, but the opinion uses "Barlow," which was her name during the time period relevant to this action.

given Sutherland a note that stated: "Pt. was seen in ED. Please excuse her from work 9/15/10 through 9/17/10."

Around 1:30 a.m., Sutherland called the VA and spoke to the nursing supervisor on duty. Sutherland explained that she had experienced an epileptic seizure, needed to take a couple of days off work, and had a doctor's note. The night supervisor told Sutherland to also call her own supervisor, Barlow, the next day. The night supervisor logged Sutherland's call in the "Leave Requests/OT-UT Record." The relevant entry shows "SL" for "sick leave" for September 15 and 16, without any information referring to epilepsy or Sutherland's seizure. Sutherland had been scheduled for certain orientation sessions on both those days.

The parties' accounts of the next couple of days diverge significantly.

According to the VA's account, Barlow learned that Sutherland had called in sick from others at the VA on September 15. Barlow became concerned about Sutherland's missed days and missed orientation and decided to recommend termination of her employment. On the morning of September 16, Barlow first emailed her supervisor, Kathleen Koch, asking her to begin the termination process. She then called Sutherland to set up a time to discuss it and "give her an opportunity to explain the situation." When Sutherland indicated that she would not be in until September 20, Barlow told her to report to Paula Newinski, a nurse manager who would be covering for Barlow while she was on vacation that week. On the call, Barlow noted her concern that Sutherland had missed multiple days and would now be AWOL. Sutherland became angry and asked whether she was being fired. Barlow said that she was not, but Barlow was moving to have her removed because she had missed mandatory orientation, had AWOL days, and had missed 5 out of 13 days. Sutherland began yelling, screaming, and crying, such that the

3

conversation deteriorated until Sutherland hung up on her. That call, on September 16, was the first time that Barlow learned anything about Sutherland's seizure or epilepsy.

According to Sutherland's account, she called Barlow on the morning of September 15, as instructed by the supervising nurse with whom she had spoken in the middle of the night. She explained to Barlow that she had experienced an epileptic seizure the night before, needed a few days off, and had a doctor's note. Sutherland asked Barlow whether she should fax or bring in the note. Barlow told her to bring it in the next day that she worked, which Sutherland believed would have been September 20.

Sutherland testified that the next morning, on September 16, Barlow and Sutherland had another phone conversation. During that call Barlow told Sutherland that she was fired. Sutherland began crying and protested the firing as unfair. She told Barlow that Barlow could not fire her because she had an epileptic seizure and a doctor's note. At some point, Barlow hung up on her. Before then, Barlow had told Sutherland that she could call HR or Paula Newinski if she had any problems with being fired. Sutherland did not go back to work or to meet with anyone at the VA, because Barlow had told her she was fired.

Documentary evidence confirms that Barlow had emailed Koch at 8:27 a.m. on September 16, providing information and requesting Sutherland's removal. In relevant part, the email said:

> Kylea Southerland, NA
> Started 8/30, hired 0.6. Stated she could orient full time because she does school on line.
> She called in sick 9/2 and said she could not come to work on 9/3 because she had school
> She was scheduled for two full days of central orientation 9/15 and 9/16. She called in 9/15 for both days.
> She will be AWOL.
> Please move to have her removed.

4

On reviewing the email, Koch contacted the Employee Labor Relations ("ELR") specialist for the relevant service line and supported the termination recommendation.

After the subsequent call between Barlow and Sutherland on September 16, Barlow spoke to Koch and relayed the conversation with Sutherland. Koch told her to memorialize the incident in a memo, which Barlow did. The memo describes Barlow's account of the relevant events. Describing the call that occurred on September 16, the memo quotes Sutherland as saying "you are wrong to fire me because of my medical condition; I'm being punished for missing for school and having seizures."

Barlow sent Koch the memo. Koch forwarded it on to the ELR specialist, who requested some additional information and documentation on September 20. The acting HR Director, Danette Bohlken, ultimately reviewed the termination request along with the underlying materials. Bohlken issued a termination letter to Sutherland dated September 28, 2010. The key paragraph of the termination letter stated:

> Your appointment was effective August 30, 2010, and is subject to satisfactory completion of a one year trial period. During this period, you were informed your performance and potential would be closely monitored to determine suitability for retention in the Federal service. I received information that you failed to attend the required Nursing Assistant Orientation and have 32 hours of AWOL. You have not demonstrated the competencies required for the position of Nursing Assistant. Therefore, I have determined that your continued employment is not in the best interest of the Minneapolis VA Healthcare System.

The "32 hours of AWOL" mentioned by the letter referred to Sutherland's absences on September 15, 16, 20, and 21, days on which she had been scheduled to work.

After the call with Barlow on September 16, Sutherland called HR and left a message. The same day, she consulted the Epilepsy Foundation and then called the VA's Office of Resolution Management ("ORM"), which triggered the agency's internal Equal Employment Opportunity ("EEO") process. The ORM notified the MVAMC of Sutherland's contact and

report on September 20, 2010. According to that notice, Sutherland had claimed "Termination (During Probationary Period)" on September 16, 2010 based on a physical disability. The notice stated that she was requesting that she be reinstated and allowed to complete her orientation and training. Sutherland spoke to HR during the week of September 20. She also informed them that she had contacted an EEO counselor at the ORM.

Sutherland's complaint eventually reached the VA's Office of Employment Discrimination Complaint Adjudication (OEDCA) for a final agency decision. The OEDCA issued that decision on September 14, 2011. The OEDCA opinion discussed the evidence and concluded that Sutherland had not shown intentional discrimination against her by management.[2]

Sutherland filed her complaint in this action on October 21, 2011. Sutherland's complaint lists the following three counts:

(1) disability discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*,

(2) failure to accommodate under the Rehabilitation Act, and

(3) retaliation under the Rehabilitation Act and Title VII, 42 U.S.C. § 2000e-16.

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need

---

[2] The OEDCA notified Sutherland of her right to appeal the decision to the Equal Employment Opportunity Commission ("EEOC") or to file a civil action without appealing to the EEOC.

consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view genuinely disputed facts in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### 1. Sutherland's Disability Discrimination Claim

The VA seeks dismissal of Sutherland's claim of disability discrimination under the Rehabilitation Act for lack of evidence of a prima facie case of discrimination, and in the alternative, for an inability to establish that the VA's proffered reasons for her dismissal are pretextual. The Rehabilitation Act prohibits discrimination against disabled individuals in the programs and activities of certain federal agencies and recipients of federal funds. *See* 29 U.S.C. § 794(a). As applicable to the operations of the VA, the Rehabilitation Act provides that no "otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability" be subjected to discrimination under any program or activity of an executive agency. *Id.* In the absence of direct evidence of intentional discrimination, claims brought under the Rehabilitation Act are analyzed under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994). Both parties analyze Sutherland's discrimination claim using the *McDonnell Douglas* framework.

The *McDonnell Douglas* framework requires a three-step process in which the burden first lies with the plaintiff to establish a prima facie case of discrimination. *Id.* To establish a prima facie case of disability discrimination under the Rehabilitation Act based on a discharge, a plaintiff must put forward evidence that she (1) was disabled, (2) was otherwise qualified to do

7

the essential job with or without reasonable accommodation, and (3) was discharged solely because of her disability.[3] *Jeseritz v. Potter*, 282 F.3d 542, 546 (8th Cir. 2002); *see also Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008). If the plaintiff meets her burden, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the action complained of by the plaintiff. *Crawford*, 37 F.3d at 1341. Once the defendant does so, the burden shifts back to the plaintiff to show that the defendant's stated reason is merely a pretext for its discrimination. *Id.*

For purposes of the motion, the VA does not challenge the disability status or qualifications elements of Sutherland's prima facie case of discrimination. The VA focuses on the third required element. It contends that Sutherland cannot show that the VA discharged her solely because of her disability.

For the third element of her prima facie case, Sutherland relies on the temporal proximity between the time she claims that Barlow learned of her disability and Barlow's decision to recommend termination of Sutherland's employment. More specifically, Sutherland contends that she told Barlow about her epileptic seizure on September 15, 2010 and Barlow commenced the termination process on September 16. She also points to the difference in Barlow's willingness to accommodate her absences before learning of the disability and after.

The VA argues that the evidence from Sutherland's cell phone records does not support Sutherland's account of the timing of her disclosure of her epileptic seizure to Barlow, but rather

---

[3] Cases interpreting the Americans with Disability Act ("ADA") or the nondiscrimination provision of the Rehabilitation Act are generally interchangeable for purposes of analyzing a discrimination claim under either. *Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 983 (8th Cir. 2013); *see also* 29 U.S.C. § 794(d). But one "important difference between the two acts is that the Rehabilitation Act 'imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff.'" *Wojewski v. Rapid City Regional Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006) (quoting *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 n.5 (8th Cir. 1999)).

comports with its account. According to the VA, Barlow only learned of Sutherland's epilepsy after recommending her termination on September 16. As such, intentional discrimination cannot be found to have motivated Barlow's decision under the *McDonnell Douglas* analysis. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (U.S. 2003) (noting that if a decision-maker "were truly unaware that such a disability existed, it would be impossible for [the] decision to have been based, even in part, on [the] disability"); *see also Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004) (noting that the *McDonnell Douglas* analysis is aimed at fleshing out the "elusive factual question of intentional discrimination") (internal quotation marks omitted).

There is no dispute that Barlow initiated the termination process by email at 8:27 a.m. on September 16, 2010. A dispute exists, however, about whether, and the extent to which, Barlow knew of Sutherland's epilepsy prior to taking that action. Sutherland testified that she called Barlow on the morning of September 15 and told her about the epileptic seizure. Barlow denies that a call occurred on September 15. Barlow testified that a call only occurred on September 16, after she had initiated the termination process. Barlow also testified that during the call on September 16, Sutherland only mentioned a "medical condition" and that she had a "seizure." Barlow did not recall the word "epilepsy" being used.

For September 15, Sutherland's cell phone records do not show any outgoing call to Barlow's direct line number. The records do, however, show what appear to be two incoming calls from the VA,[4] one at 9:26 a.m. and the other at 11:59 a.m. Based on Sutherland and

---

[4] The record includes Sutherland's cell-phone records with most of the call entries redacted. Sutherland does not point to testimony regarding the visible numbers. However, the other facts in the record about calls Sutherland made to the VA, for example in the early morning hours of September 15, 2010, provide enough from which a fact-finder could conclude that the two incoming calls came from the VA.

9

Barlow's testimony[5] and the cell phone records, genuine disputes of material fact exist about the timing of the relevant phone conversation and the information communicated about Sutherland's epilepsy to Barlow. At this stage, the disputes must be resolved in Sutherland's favor.

Crediting Sutherland's version of the facts, she disclosed her epilepsy to Barlow during a phone conversation on September 15, 2010. The next morning, Barlow initiated termination proceedings against Sutherland. The temporal proximity between Sutherland's disclosure of her epilepsy and the termination proceedings suffices as evidence for her prima facie case of discrimination. *See Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113-14 (8th Cir. 2001).

To meet its burden at the next stage, the VA contends that it terminated Sutherland's employment for legitimate, non-discriminatory reasons. In particular, the VA asserts that it fired Sutherland for not attending required orientation, being AWOL, and not demonstrating the competencies required of the nursing assistant position. The VA emphasizes the fact that Sutherland was a probationary employee, for whom minor infractions could be grounds for termination.

Sutherland responds that the VA's proffered reasons for termination are pretextual. To establish pretext, "a plaintiff must present sufficient evidence that both the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010). Implausible explanations, stated reasons with no basis in fact, or shifting explanations may support a finding of pretext. *See EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 570 (8th Cir. 2007).

---

[5] Barlow testified that no call occurred on September 15 and that she called Sutherland on September 16. As Barlow's declaration acknowledges, Sutherland's cell phone records reflect an out-going call to Barlow's number and no incoming call on September 16.

Factual disputes preclude a determination in the VA's favor on the question of pretext at the summary judgment stage. Each of the justifications proffered by the VA potentially implicates Sutherland's absences from work on September 15 and 16, 2010—days she missed because of her epileptic seizure. As such, the three reasons do not allow for a clear determination as a matter of law that Sutherland cannot meet her burden to establish unlawful discrimination. *Cf. Perkins v. St. Louis County Water Co.*, 160 F.3d 446, 448-49 (8th Cir. 1998) (affirming summary judgment in employer's favor where plaintiff had "not produced sufficient evidence that his [disability] was linked to his absences from work and to his subsequent termination for excessive absenteeism"); *Price v. S-B Power Tool*, 75 F.3d 362, 365-66 (8th Cir. 1996); *see Dark v. Curry County*, 451 F.3d 1078, 1084 (9th Cir. 2006).

The VA's first proffered reason—Sutherland's AWOL status on September 15, 16, 20, and 21—does not yield a distinct justification, unaffected by Sutherland's absences resulting from her epilepsy. Excluding the absences on September 15 and 16, for which the doctor gave her a note in connection with her epileptic seizure, leaves her AWOL status on September 20 and 21 for consideration. While Sutherland's AWOL status on September 20 and 21, admittedly unrelated to her epilepsy, might alone have warranted dismissal, Sutherland contends that she missed those days because Barlow fired her on September 16. A factual dispute exists over what Barlow told Sutherland on September 16. On the one hand, Sutherland testified that Barlow told her she was fired. The account of the conversation in Barlow's memo as well as the September 20, 2010 EEO notice reflect Sutherland's belief that she had been fired by Barlow on September 16. On the other hand, the VA's evidence shows that Barlow lacked authority to terminate Sutherland's employment, she had asked Sutherland to report to Newinski on September 20, and the formal review and termination process was still underway at least as of September 20.

As to her AWOL status on September 15 and 16, the parties dispute whether Sutherland had agreed to work full time during orientation and whether schedule adjustments for a .6 FTE was an exception or the norm. The record contains conflicting testimony on whether she had agreed to work full time initially, although neither party claims that Sutherland's attendance on days that she was scheduled to work was optional so long as she worked .6 the time of an FTE. Rather, they dispute whether a schedule adjustment within the confines of the total-hours-expectations for a .6FTE was an exception or norm. Neither party has pointed to evidence to definitively resolve that dispute in its favor. Resolution of these disputes may reasonably affect a fact-finder's determination as to whether Sutherland's AWOL status amounted to a non-pretextual legitimate reason for her dismissal.

The VA's second reason—missing required nursing assistant orientation—relates to training and orientation activities that Sutherland missed on September 2, 3, 15, and 16. Although the record is not completely clear, it appears that Sutherland might have made up the missed activities of September 2-3 on September 7-8. At any rate, the record lacks evidence from which the Court can conclude at summary judgment that the training missed on September 2-3, without consideration of the training missed on September 15-16, amounts to a legitimate non-discriminatory reason for the termination, alone or in combination with the other proffered reasons.

As the third justification for its termination of Sutherland's probationary employment, the VA uses the generalized reason of a failure to demonstrate "the competencies required for the position of Nursing Assistant." In explaining this reason more specifically in its reply brief, the VA first mentions Sutherland's attendance record. Here again, the effect of her absences on September 15 and 16 complicates the pretext analysis on summary judgment.

12

While Barlow opted to modify the schedule so that Sutherland would not be charged with an AWOL designation for missing two days of her first week on the job, Barlow's forbearance that first week does not, contrary to Sutherland's view, remove those early absences from fair consideration of Sutherland's overall record as a probationary employee. Sutherland's actions of asking for a day off on the Friday and calling in sick on the Thursday of her first week on the job, even if not penalized, may legitimately reflect adversely on her. Still, the bare fact remains that the VA did not terminate Sutherland's employment following her absences on September 2 and 3. A fact-finder might well conclude that Barlow's alterations to the schedule for Sutherland's benefit amount to a "good deed" that shall go "unpunished" or might otherwise reject Sutherland's claim of intentional discrimination. The different treatment of the third week's absences resulting from Sutherland's epileptic seizure, however, precludes summary judgment for the VA.

The VA's reply brief mentions "following supervisor instructions, and conducting oneself appropriately" as required competencies, but does not specifically identify Sutherland's conduct that demonstrates her shortcomings with regard to them. To the extent the VA intends to allude to Sutherland's phone conversation with Barlow and subsequent events after Sutherland's epileptic seizure, the testimonial evidence on Sutherland's conduct conflicts. The issue cannot be resolved on summary judgment.

The Court recognizes that at the pretext stage the plaintiff's burden merges with her ultimate burden of establishing that she was the victim of intentional discrimination. *See Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 955 (8th Cir. 2012); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.").

Under the circumstances presented, Sutherland faces a challenging burden at trial. Nonetheless, the evidence does not so unwaveringly favor the VA as to allow for a summary judgment finding in its favor.

### 2. Sutherland's Failure to Accommodate Claim

The VA seeks dismissal of Sutherland's "failure to accommodate" claim on the grounds that the VA did not know of her disability; she did not make a cognizable request for an accommodation; and she did not do her part for any interactive process that should have occurred. A violation of the Rehabilitation Act occurs when an employer fails to make reasonable accommodations for the known physical or mental limitations of a disabled employee, unless the accommodation would impose an undue hardship on the employer. *Peebles*, 354 F.3d at 766 (citing 29 C.F.R. 1630.9(a)). A reasonable accommodation claim does not turn on the discriminatory intent of the employer, but rather on whether the employer failed to fulfill an affirmative duty to reasonably accommodate the disabled employee's limitations. *Id.* at 767. The reasonable accommodation requirement obligates employers to undertake measures to enable disabled individuals to have the same opportunities as similarly-situated non-disabled employees. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136-37 (8th Cir. 1999).

To determine the need for, and nature of, a reasonable accommodation, the employer and employee must engage in an "interactive process." *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009). A predicate requirement for the initiation of the interactive process, however, is a request for accommodation or assistance by the employee. *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999) (agreeing there is no per se liability if an employer fails to engage in the

14

interactive process and noting "the predicate requirement that when the disabled individual requests accommodation, it becomes necessary to initiate the interactive process").

Sutherland claims that she made a request for an accommodation and the VA failed to engage in the requisite interactive process. An employee claiming that the employer failed to engage in the interactive process must demonstrate that (1) the employer knew about the disability; (2) the employee requested an accommodation or assistance for the disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Ballard*, 284 F.3d at 960.

As to the first element of knowledge, under Sutherland's account of the facts, she made Barlow aware of her epileptic seizure on September 15, 2010, the day before Barlow recommended termination of her employment. When asked to recall the conversation with Barlow "word for word" as best she could, Sutherland said she "told her about my epileptic seizure, told her that I need a few days off, that I had a doctor's note…." The VA disputes Sutherland's account, and Barlow testified that she only spoke to Sutherland on September 16, after she had already requested her discharge. Barlow also testified that she did not recall the word "epilepsy" being used.

Resolving this dispute and determining whether the VA knew of a qualifying disability are tasks for the fact-finder. *See Liberty Lobby*, 477 U.S. at 255 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are not the judge's functions in ruling on a motion for summary judgment). At trial, Sutherland will need to establish that the VA had sufficient information regarding the nature and extent of her disability. *See Piccolo v. Wal-Mart*, Civ. No. 11-406S, 2012 U.S. Dist. LEXIS

75991, *19-21 (W.D.N.Y. May 30, 2012); *Green v. Am. Univ.*, Civil No. 07-52, 2009 U.S. Dist. LEXIS 74386, *29-30 (D.D.C. 2009). The EEOC's regulations implementing the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") identify epilepsy as an impairment that should be readily evaluated as a qualifying disability. 29 C.F.R. 1630.2(j)(3)(iii); *see also* 29 U.S.C. § 705(9) (confirming that the term "disability" for purposes of § 794(a) of the Rehabilitation Act will be given the meaning given it under the ADA). Consequently, Sutherland's evidence suffices to raise an issue of fact as to whether the VA had knowledge of a qualifying disability prior to its termination decision.

For the second element required to support Sutherland's claim that the VA failed to engage in the interactive process, Sutherland points to her account of the September 15 call notifying Barlow of the seizure and Sutherland's need for a few days off as the qualifying "request" for an accommodation. The VA contends that at most Sutherland requested sick leave, which does not qualify as a request for an accommodation cognizable under the Rehabilitation Act. But the VA does not explain why such a request should not qualify. The Eighth Circuit has noted that allowing for medical leave "might, in some circumstances, be a reasonable accommodation." *Brannon v. Luco Mop Co.*, 521 F.3d 843, 849 (8th Cir. 2008) (internal quotation marks omitted). And there are no magic words or formalisms that must be met to make a qualifying request, although the employee must provide enough information so that, "under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Ballard*, 284 F.3d at 962 (quoting and adopting the formulation from *Taylor v. Phoenixville School District*, 174 F.3d 142 (3d Cir. 1999)).

As discussed above, a factual dispute exists as to whether, and the extent to which, Sutherland notified Barlow of her epilepsy on September 15. A dispute also exists over whether

16

Barlow told Sutherland to have a follow-up meeting to discuss the details of her situation with Paula Newinski, which Sutherland did not do. Moreover, Sutherland testified that she left HR a voicemail on September 16 itself. Additionally, the September 20, 2010 "Notice of Informal Counseling" sent by the VA's ORM shows that Sutherland had requested "reinstatement,"[6] presumably because she believed she had already been fired, and permission to complete her orientation. Based on this record, Sutherland has met the minimal threshold to make triable the question of whether she failed to notify the VA of her disability and desire for an accommodation in a timely manner.[7]

These same factual disputes also preclude a determination of the third and fourth elements on summary judgment. According to the VA's account, Sutherland did not tell Barlow

---

[6] While a request for "reinstatement" after dismissal would not be a timely request for accommodation, *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1218 (8th Cir. 1999), documentary evidence in the record indicates that the VA had not made a formal decision to terminate Sutherland's employment as of September 20 or later. Thus, Sutherland's request for reinstatement could be viewed as a request that her absences necessitated by her seizure be excused.

[7] A proper request for a reasonable accommodation must generally seek an accommodation that is prospective in nature. *See Hill v. Kansas City Area Transp. Authority*, 181 F.3d 891, 894 (8th Cir. 1999) (finding a request for accommodation untimely when it was made after the conduct warranting dismissal occurred, even though the conduct resulted from the plaintiff's disability); U.S. Equal Opportunity Employment Commission, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act, Notice 915.002, Ques. No. 36 (Oct. 17, 2002) ("Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability."). While Sutherland could not predict when her seizures might occur, she knew that she had a history of seizures and that her condition might necessitate unanticipated days off from work. She also knew that as a new and probationary employee, she would need to accumulate leave time before being able to be out sick without penalty. Yet she chose not to notify management about her condition and the potential it entailed for an unexpected need for sick leave, prior to the time when her being absent was inevitable, as it was on September 15 and 16. Thus, even if Sutherland made a sufficient request for an accommodation on September 15 or 16, it could be deemed untimely. Although the issue is a close one, the Court decides it in Sutherland's favor on summary judgment in light of the evidence that the VA had not yet decided to terminate her employment on September 16 and because of the factual disputes over the extent to which Sutherland had notified management about her epilepsy before completion of the VA's decision-making process.

about her epilepsy when they spoke, Barlow had asked Sutherland to report to Paula Newinski on September 20 to discuss the situation further, and Barlow did not show up. If these facts were undisputed, the Court might decide as a matter of law that Sutherland cannot show that the VA did not make a good faith effort to assist her in seeking accommodations or that the VA could have accommodated her, but for a lack of good faith. But Sutherland disputes these facts with testimony that conflicts with Barlow's account. Consequently, summary judgment is inappropriate on Sutherland's failure to accommodate claim.

   3. **Sutherland's Retaliation Claim**

The VA seeks dismissal of Sutherland's retaliation claim on the grounds that none of her actions amount to protected activity and, even if any of her actions are construed as such, she cannot show the requisite causal link between that activity and her dismissal. In the absence of direct evidence, an employee's retaliation claims are also analyzed using the three-part burden-shifting framework outlined in *McDonnell Douglas*, which calls sequentially for evidence of a prima facie case, articulation of a non-retaliatory justification, and a showing of pretext. *See Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2000). To establish a prima facie case of retaliation, the employee must demonstrate (1) that she engaged in a protected activity, (2) that the employer took an adverse action against her, and (3) that a causal connection exists between the two. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006).

The VA contends that Sutherland did not engage in any protected activity prior to her dismissal. In response, Sutherland points to several actions as constituting protected activity, including her request to Barlow for leave on September 15, her complaint to Barlow and the internal EEO department on September 16, and her conversation with HR during the week of September 20. A complaint about, or other opposition to, an employer's act may be protected if

18

the employee reasonably believes such an act to be a violation of the Rehabilitation Act. *Sherman*, 235 F.3d at 409-10. At a minimum, Sutherland's complaint to the EEO department would qualify as protected activity.

As to the requisite causal link, a plaintiff making a retaliation claim must establish that her protected activity was a but-for cause of the adverse action by her employer. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). The temporal proximity between Sutherland's claimed protected activity and her dismissal suffices for purposes of Sutherland's prima facie case. *See Sherman*, 235 F.3d at 410; *Foster v. Time Warner Entertainment Co., L.P.*, 250 F.3d 1189, 1195-96 (8th Cir. 2001). Neither party makes an argument about legitimate non-discriminatory reasons for the VA's action or regarding pretext that is specific to Sutherland's retaliation claim. Both parties appear primarily focused on the discrimination claims. Nonetheless, to the extent the parties intended to rely on the articulated justifications and pretext arguments made in connection with Sutherland's discrimination claim, the factual disputes previously discussed preclude summary judgment on the retaliation claim.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant Eric E. Shinseki's Motion for Summary Judgment [Docket No. 22] is DENIED.

Dated: November 6, 2013

s/Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge